## Robbins v. Westmoreland Coal Company.

| 198 | 301 |
| e209 | 630 |

| 198 | 301 |
| 224 | 1422 |
| e224 | 1423 |

*Vendor and vendee—Agreement as to interest—Unpaid purchase money —Incumbrances.*

Where an agreement for the purchase of land provides that the first instalment of the balance of the purchase money shall be paid "upon delivery of deed clear of incumbrances" with interest on deferred instalments from date of the delivery of the deed, and it appears that at the time the deed was delivered, there were incumbrances upon the land known to the grantee, and subsequently by agreement of the parties in order to clear the land of incumbrances, a sheriff's sale is had of it, the vendor cannot claim interest from the date of the delivery of the deed, but only from the date of the sheriff's deed to the vendee.

*Equity—Accounting—Interest—Costs.*

Where on a bill in equity for an account, it appears that the defendant had already accounted and that the only question involved was a question of interest, and the court sustains the contention of the defendant that the interest demanded was for a greater amount than was proper, and it appears that the questions unnecessarily raised by the bill occasioned at least one half of the costs incurred in the proceeding, the court commits error in charging all of the costs against the defendants.

Argued Oct. 30, 1900.   Appeal, No. 155, Oct. T., 1900, by defendants, from decree of C. P. No. 2, Allegheny Co., July T., 1898, No. 381, on bill in equity in case of Edward E. Robbins, assignee for benefit of creditors of James White v. The Westmoreland Coal Company et al.   Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ.   Reversed.

Bill in equity for an account.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*Johns McCleave*, with him *D. T. Watson, George Tucker Bispham, James S. Morehead* and *John B. Head*, for appellant.— There is no statute upon which the claim for interest in this case can be based; it cannot be based upon the unjust and wrongful detention of money due, because the money was re-

tained by the express contract of the parties. The claim is made and must be made upon the special contract; it can have no other foundation, and it was so founded by the court below: Klages v. Phila. & Reading Terminal Co., 160 Pa. 388 ; Kelsey v. Murphy, 30 Pa. 340 ; Easton Bank v. Commonwealth, 10 Pa. 453 ; Minard v. Beans, 64 Pa. 412.

*James R. Macfarlane*, with him *Edward F. Hays*, *Thomas F. Noble*, *John F. Sanderson*, *E. E. Robbins*, *Frank Thompson* and *W. H. S. Thomson*, for appellees.—The stipulation of May 13, 1892, was a substitute for a mortgage, and to a mortgage the defendant could only defend that, instead of paying White, it had paid his creditors, and interest would run to those payments : McGinnis v. Noble, 7 W. & S. 454; Garrard v. Lantz, 12 Pa. 186 ; Boyd v. McCullough, 137 Pa. 7.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1901:

This appeal raises two questions for the consideration of the court: 1. Should interest on the unpaid balance of purchase money due the plaintiff be computed from May 4, 1892, the date of the delivery of the deed by White to the trustee of the defendant company? 2. Should all the costs of this proceeding be paid by the defendant? The court below determined both questions in the affirmative, and this is the error complained of by the appellant.

In his contract, dated April 30, 1892, White agreed to sell and convey the coal therein mentioned to the Westmoreland Coal Company, and " on or before May 1, 1892, or as soon thereafter as the several parties from whom the said first party is purchasing the above stated properties shall deliver to him deeds for the same, to deliver . . . . a good and sufficient deed in fee simple for all of the above stated coal properties, with mining privileges clear of all incumbrances, except such as are hereinafter mentioned." The purchase money was to be paid as follows : " Ten thousand dollars on the execution of the agreement; the assumption of certain liens ; the deposit of $35,000 to apply to the payment of incumbrances then existing against the property," and " the balance of purchase money owing for all the above stated coal properties to be paid to the said party of the first part, one third thereof in hand upon delivery of deed clear

of incumbrances other than as stipulated above, one third thereof in one year, and the remaining one third in two years, with interest on said deferred instalments from the date of the delivery of the deed, to be secured by bond and mortgage on the said coal properties and with the right to anticipate payments before maturity." By direction of the coal company, White conveyed the coal to the company's trustee by deed dated May 4, 1892.

The trial judge finds that the purchase money in the hands of the coal company was less than the amount of the incumbrances ; that in order to prevent the sale from falling through, the company, with the co-operation of White, purchased a number of judgments against him, and that after it did so, it was agreed between the company and White that the best way to give title to the company free of incumbrances was to permit the lands to be sold at sheriff's sale on a judgment prior to the agreement of sale ; that White's interest in all the lands was levied upon on judgments not held by the company's trustee, and was sold by the sheriff to the company. The judge further finds that this sale was made for the purpose of procuring a clear title to the lands for the coal company, and it was agreed that the sale should not, as between White and the company, affect his right to be paid according to the contract. The sheriff's sale took place on February 2, 1894.

Under these facts the learned judge of the court below finds as a conclusion of law that White's claim to interest on the unpaid balance of the purchase money rests solely upon the contract, and holds that the company is liable for interest from May 4, 1892, the date of the delivery of the deed by White to Gaither. He assigns as a reason for his position that " the contract was made, and the deed executed under and with full knowledge of the facts, and on the making of the deed, a stipulation was given which takes the place of a mortgage for deferred payments." The stipulation referred to is dated May 13, 1892, was signed by Mr. Gaither as trustee, and states that James White having delivered the deeds for the lands, "it is understood that the full sum of $200 per acre shall hereafter be paid to or accounted for to said James White as stipulated in the above agreement by said Westmoreland Coal Company."

The facts found by the learned court are not excepted to, and

on them this contention must be determined. We agree with the court that the right of the plaintiff to claim interest depends on the contract of April 30, 1892. But we cannot assent to the conclusion that this imposes upon the defendant liability for the payment of interest from May 4, 1892. White's covenant required him to deliver not only a deed, but one clear of all incumbrances. His agreement was likewise explicit in the provision as to the time of payment of the balance of the purchase money. One third thereof was to be paid upon delivery of the deed clear of all incumbrances and the remaining two thirds in one and two years respectively thereafter with interest from the date of the delivery of the deed. The first instalment of the unpaid purchase money, therefore, was not due and payable until White had delivered not only a deed, but one clear of all incumbrances. Until both of these conditions had been complied with, the defendant was not required to pay the money and was in no default in not paying it. If, therefore, White desired to place himself in a position to demand interest on the first instalment of the remaining unpaid purchase money, he should have delivered or tendered a deed for the lands clear of incumbrances. Thereafter, the defendant would have been in the position of detaining or withholding the money due and payable to the plaintiff, and, hence, responsible for the interest thereon. For the same reason, the second and third instalments of the unpaid purchase money did not bear interest from the delivery of the deed on May 4, 1892. Interest did not begin to run on these instalments until the land had been cleared of incumbrances and the deed had been delivered.

As found by the learned judge, the sheriff's sale was made in pursuance of an agreement between White and the company for the purpose of discharging the land from the incumbrances against it. This course was, therefore, pursued and the land was sold by the sheriff to enable White to comply with his contract to deliver "a deed clear of incumbrances." When the sheriff's sale had been effected and the deed had been delivered, the land was clear of incumbrances, and the deed of May 4, 1892, vested the title to the property in the defendant discharged of liens. Then the unpaid purchase money became payable, and its further detention subjected the defendant to payment of interest as stipulated in the contract.

The acceptance of the deed of May 4, 1892, with a knowledge of the facts and the statement accompanying it signed by the trustee, did not modify or change the contract of April 30, 1892, as the learned court seems to think. As we have observed, delivery of the deed was only one of the conditions precedent to the payment of the balance of purchase money. The mere acceptance of the deed with a knowledge of the incumbrances against the land was not a waiver of the provision in the contract requiring a deed clear of incumbrances. Nor did the stipulation of the trustee affect the status of the parties as fixed by the contract. It provided merely for the payment of the money "as stipulated in the above agreement."

The learned counsel of the appellee contend that " the company's three agreements, April 20, 1892, May 13, 1892, and January 11, 1894, sustain the court below and fix the defendant for interest from May 4, 1892." We have referred to the first two of these agreements and their effect on the question under consideration. The alleged agreement of January 11, 1894, is embodied in a letter of Messrs. Marchand & Gaither, signed by the president of the defendant company, in which it is stated that the company will punctually fulfil its engagements with Mr. White and " that if any balance over and above the amount to which he is entitled should exist, it shall be immediately paid over to him or to any person whom he may designate." It is at once apparent that this paper does not affect in any way the agreement between the parties of April 20, 1892. It is merely a declaration that the defendant company will comply with the terms of its contract.

The authorities cited by the counsel of the appellee apply to a state of facts alleged by them to exist in this case, but which are not found by the trial judge. They are not pertinent to the legal questions arising on the facts shown by the evidence and found by the court.

The remaining question for consideration is the action of the court below in imposing all the costs of the proceeding on the defendant company. No reason is assigned for this part of the decree, and we are unable to discover one. We have carefully examined the pleadings and read the testimony, and are convinced that the defendant should not pay more than one half of the costs. The averments of the plaintiff's amended bill and

his own testimony sustain the contention of the defendant company, that the only question in controversy between the plaintiff and the defendant was the liability of the latter for interest and the date from which it should be calculated. The account prepared by Marchand & Gaither was presented to White October 26, 1897, and certified by him to be correct. Mr. Robbins, White's assignee, being interrogated on the trial of the cause in regard to the account, testified as follows: " Q. And if you had agreed on the interest that day, the whole thing would have been closed out? A. If we had agreed on the interest that day, it would have been closed there. . . . Q. And you yourself were not raising any objections that they didn't suggest, were you? A. I can't say that I was seeking to raise any objection about it. I was trying to get the case adjusted. The principal contention I was aiming at was the interest. Q. And if White was satisfied, you were satisfied, and what the parties split on was a calculation of interest? A. That was the main contention. . . . . Q. You went over this account with Mr. Gaither, didn't you? A. I think it was discussed every time we met for that purpose. Q. And you had the account before you, and you approved of all these payments, did you? A. I always approved of the matter as far as Mr. White approved it. A great many of these payments were made when I was not present. I have no doubt the money was applied just as it was in the account. I never questioned that; the thing I contended for was that the interest should begin at the time the money was properly payable, and that no interest was allowed to Mr. White in any place, and therefore he was entitled to that, and that our account showed the amount due at that time was $10,200. Q. And all items and payments were admitted by you and by White as you understood it? A. The items were admitted. That was the only thing we disputed about. Q. And the only question for settlement was the calculation of interest, wasn't it? A. That seemed to be the only question open at that time." Mr. Gaither, Mr. Woods and Mr. McCullough testified that at the interview in Philadelphia, when the attempt was made to settle the differences between the parties, the account was admitted to be correct by both White and his assignee, and that the only matter in dispute was the question of interest. While the negotiations for a settlement were pending, Mr. Woods saw

a copy of the original bill and called to see Mr. Robbins, in regard to it. Mr. Woods testifies that on that occasion Mr. Robbins stated to him " that the only question in the case was as to the payment of interest by the Westmoreland Coal Company on the amount alleged to be due by the Westmoreland Coal Company to Mr. White ; that there was nothing else in the case but that."

As we have determined that the defendant was right in its contention in regard to the date from which interest on the unpaid purchase money should be computed, we do not think it should be required to pay all the costs. So far as the plaintiff is concerned an account had been rendered, the items of which as shown by the testimony were not disputed, and therefore the litigation was not necessary for that purpose. It was likewise needless as a means for the collection of any balance due the plaintiff, as the defendant company showed a readiness to pay promptly any such balance. The learned court below found that the defendant company had no notice of the assignment of January 15, 1894. The litigation therefore was not required to adjust the rights of the assignees and the defendant company as the latter, by reason of want of notice of the assignment, was protected in any payment it had made. At all events it is safe to assume that the questions unnecessarily raised by the plaintiff's bill occasioned at least one half of the costs incurred in the proceedings.

The assignments of error are sustained, the judgment is reversed and it is ordered, adjudged and decreed that all the costs of the proceeding, including the fee to the expert, be paid in equal proportions by the plaintiff and the defendant company, and further that the court below ascertain the balance, if any, of unpaid purchase money due the plaintiff from the defendant, by computing interest from the day of the delivery of the sheriff's deed. Costs of this appeal to be paid by the plaintiff.